UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ACS INDUSTRIES INC., ) ) )  Plaintiff, ) ) v. ) ) GREAT NORTHERN INSURANCE ) COMPANY, ) ) Defendant. ) ) | C.A. No. 1:22-CV-00095-MSM-LDA |

MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

This matter is an insurance coverage dispute in which the plaintiff, ACS Industries, Inc. ("ACS"), seeks coverage from its insurer, Great Northern Insurance Company ("Great Northern"), for business income losses incurred during government-mandated shutdowns during the COVID-19 pandemic and because of the presence of COVID-19 in its properties. Great Northern has moved to dismiss ACS's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) under the theory that Rhode Island law comports with the great weight of authority rejecting coverage under the circumstances alleged.

For the following reasons, the Court GRANTS Great Northern's Motion to Dismiss. (ECF No. 16.)

1

## I.   BACKGROUND

The plaintiff, ACS, is a Rhode Island corporation with international operations in the manufacturing of engineered knitted wire mesh solutions. (ECF No. 1 ¶ 1.) At all relevant times ACS had an all-risk commercial property insurance policy ("the Policy") with defendant Great Northern. *Id.* ¶¶ 1, 4.

ACS operated three insured premises in Mexico. *Id.* ¶ 19. In March 2020, because of the COVID-19 pandemic, the Mexican government issued civil-authority and government orders requiring "the immediate suspension of all non-essential activities, including the manufacturing operations" at two of ACS's manufacturing plants and resulted in the "forced closure of the Mexico Plants and ACS's dependent business premises." *Id.* ¶¶ 100, 102. Two of the Mexico Plants were "fully closed" and operations at a third "were significantly limited." *Id.* ¶ 103.

ACS further alleges that the "presence of Coronavirus in and on the Mexico Plants caused ACS to suffer direct physical loss or damage to its Mexico Plants." *Id.* ¶ 119. Moreover, the virus "directly and physically changes, alters, or transforms the composition of the air" into a "transmission vector for COVID-19" and "adheres to surfaces and objects, physically changing and physically altering those objects by becoming a part of their surface and making physical contact with them unsafe for their ordinary and customary use." *Id.* ¶¶ 58, 97.

ACS sought coverage under five provisions of the Policy—Civil or Military Authority Coverage, Premises Coverage, Business Income, and Extra Expense Coverage, Dependent Business Premises, and Loss Prevention Expenses Coverage.

2

Each of these provisions is triggered by "direct physical loss or damage" to the property. Concluding there was no such physical loss or damage, Great Northern denied the claim and ACS brought this suit pursuant to the Court's diversity jurisdiction, 28 U.S.C. § 1332. ACS has asserted prayer for a declaratory judgment and a claim for breach of contract, alleging that it is entitled to coverage under the relevant Policy provisions for losses it suffered during the COVID-19 pandemic.

Great Northern moves to dismiss the Complaint, arguing that ACS fails to plausibly allege any "direct physical loss or damage" to property that would trigger coverage.

## II.   MOTION TO DISMISS STANDARD

To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court assesses the sufficiency of the plaintiff's factual allegations in a two-step process. *See Ocasio-Herandez v. Fortuno-Burset*, 640 F.3d 1, 7, 11-13 (1st Cir. 2011). "Step one: isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Schatz v. Republican State Leadership Comm.*, 699 F.3d 50, 55 (1st Cir. 2012). "Step two: take the complaint's well-pled (*i.e.,* non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." *Id.* "The relevant question … in assessing plausibility is not whether the complaint makes any particular factual allegations but, rather, whether 'the complaint warrant[s] dismissal because it failed *in toto* to render plaintiffs' entitlement to relief

3

plausible." *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 55 (1st Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007)).

### III. DISCUSSION

A federal court sitting in diversity applies state substantive law. *Suero-Algarin v. CMT Hosp. Hima San Pablo Caguas*, 957 F.3d 30, 39 (1st Cir. 2020). Neither party disputes that Rhode Island law applies. The central question here, whether the presence of the COVID-19 virus can constitute "direct physical loss or damage" has not, however, been determined by the Rhode Island Supreme Court. But Judge Stern of the Rhode Island Superior Court issued a persuasive opinion in *Josephson, LLC v. Affiliated FM Insurance Company*, No. PC-2021-03708, 2002 WL 999134, *12 (R.I. Super. Ct. Mar. 29, 2022), determining that "COVID-19 is not capable of causing 'physical loss or damage' to property." Final judgment entered in *Josephson* and an appeal followed. Because a ruling from the Rhode Island Supreme Court on this issue would provide useful and controlling guidance, this Court followed the lead of the First Circuit in a substantially similar case, *Legal Sea Foods, LLC v. Strathmore Insurance Company*, No. 21-1202, which held the matter in abeyance until the Massachusetts Supreme Judicial Court decided a pending case involving similar facts and policy language. *See Legal Sea Foods*, Order of Court, Dec. 16, 2021. This Court therefore stayed this matter until the Rhode Island Supreme Court decided *Josephson*.

The Rhode Island Supreme Court decided *Josephson* but on an alternate ground of a contamination exclusion in the policy—an exclusion not present in the

4

Policy here—and did not therefore reach the issue of whether the presence of COVID-19 constituted "direct physical loss or damage" to property. 314 A.2d 954, 955 (R.I. 2024). Thus, in the end, *Josephson* did not answer the question squarely presented here. But there are other sources a federal court sitting in diversity may consult to "ascertain the rule the state court would most likely follow under the circumstances." *CVS Pharmacy, Inc. v. Lavin*, 951 F.3d 50, 58 (1st Cir. 2020) (quoting *Blinzler v. Marriott Int'l, Inc.*, 81 F.3d 1148, 1151 (1st Cir. 1996)). These include "decisions of the lower state courts" and "persuasive adjudications by courts of sister states." *Lavin*, 951 F.3d at 58; *Barton v. Clancy*, 632 F.3d 9, 17 (1st Cir. 2011).

As to lower state courts, Judge Stern held in *Josephson* that, under Rhode Island law, a virus cannot cause "physical loss or damage" to a property because it "does not permanently exist on surfaces for an indefinite period of time, unlike mold, and does not require any physical repair, replacement, or rebuild to remedy its presence on property." 2022 WL 999134, at *14. "At most, the physical response required when faced with the presence of COVID-19 at an insured location is to undertake routine cleaning and disinfecting." *Id.* "Indeed, the very fact that COVID-19 can be eliminated by routine cleaning and disinfecting is further evidence that the property upon which COVID-19 exist (or allegedly exist) is in no way physically damaged or lost." *Id.*

The First Circuit recently observed that the "clear consensus" of sister states is in accord with this reasoning to reject coverage. *Lawrence Gen. Hosp. v. Cont'l Cas. Co.*, 90 F.4th 593, 603-04 (1st Cir. 2024). *See, e.g., Another Planet Ent., LLC v.*

5

*Vigilant Ins.*, 548 P.3d 303, 307 (Cal. 2024) ("We conclude, consistent with the vast majority of courts nationwide, that allegations of the actual or potential presence of COVID-19 on an insured's premises do not, without more, establish direct physical loss or damage to property within the meaning of a commercial property insurance policy."); *Consol. Rest. Operations, Inc. v. Westport Ins.*, 235 N.E.3d 332, 333 (N.Y. 2024) (affirming dismissal of complaint for coverage for business closure due to COVID-19 because "direct physical loss or damage requires a material alteration or a complete and persistent dispossession of insured property"); *AC Ocean Walk, LLC v. Am. Guarantee & Liab. Ins.*, 307 A.3d 1174, 1186-87 (N.J. 2024) (holding that the insured's allegations of the presence of COVID-19 did not satisfy the policy language requiring physical loss or damage because that policy language required property to be "destroyed or altered in a manner that rendered it unusable or uninhabitable"); *Schliecher & Stebbins Hotels, LLC v. Starr Surplus Lines Ins.*, 302 A3d 67, 79 (N.H. 2023) (""[T]he danger of the virus is to people in close proximity to one another, not to the real property itself."); *Starr Surplus Lines Ins. Co. v. Eight Jud. Dist. Ct. in & for Cnty. of Clark*, 535 P.3d 254, 264 (Nev. 2023) ("[E]ven taking [the insured]'s unrebutted, scientific evidence as true, it fails to demonstrate how the [properties] were subject to the type of material, tangible harm constituting direct physical loss or damage."); *Conn. Dermatology Grp., PC v. Twin City Fire Ins. Co.*, 288 A.3d 187, 203 (Conn. 2023) ("[W]e find persuasive the cases that have held that the virus is not the type of physical contaminant that creates the risk of a direct physical loss because, once a contaminated surface is cleaned or simply left along for a few days, it

no longer poses any physical threat to occupants."); *Verveine Corp. v. Strathmore Ins. Co.*, 184 N.E.2d 1266, 1275 (Mass. 2022) (affirming dismissal of claims for coverage due to COVID-19 closures because "'direct physical loss of or damage to' property requires some 'distinct, demonstrable, physical alteration of property.'").

Indeed, as the First Circuit recently held, "the question is not whether the virus is physical, but rather if it has direct physical effect *on property* that can be fairly characterized as 'loss or damage.' … And as multiple courts have found, such direct physical effect on property does not occur with SARS-CoV-2, where 'the problem of COVID-19 and its associated health risks are entirely dependent on people being present at the property, rather than arising from any harm to or defect in the property itself.'" *Lawrence Gen. Hosp.*, 90 F.4th at 603 (emphasis in original) (internal citations omitted).

This Court concludes that the Rhode Island Supreme Court would join the overwhelming weight of authority that the presence of a virus does not constitute "direct physical loss or damage" to property under the Policy. As such, ACS has not plausibly alleged any damage or alteration to the properties that would trigger coverage. Dismissal of ACS's Complaint is therefore warranted.

## IV.   CONCLUSION

For the foregoing reasons, the defendant, Great Northern's, Motion to Dismiss (ECF No. 16) is GRANTED.

IT IS SO ORDERED.

_____
Mary S. McElroy
United States District Judge
July 19, 2024